FOR PUBLICATION

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
### APPELLATE DIVISION

MICHAEL LEWIS,                    )
        Appellant,      )
                      )
        v.            )  **D.C. Crim App. No. 2002-56**
                      )  Re: Sup. Ct. Crim. No. 199-F377
THE GOVERNMENT OF THE VIRGIN  )
ISLANDS,                  )
        Appellee.       )
_____)

On Appeal from the Superior Court of Court of the Virgin Islands
Superior Court Judge: The Honorable Ive Arlington Swan
Considered: September 23, 2005
Filed: July 29, 2009

BEFORE:    **RAYMOND L. FINCH**, Chief Judge, District Court of the
Virgin Islands; **CURTIS V. GOMEZ**, Judge of the District
Court of the Virgin Islands; and **PATRICIA D. STEELE**,
Judge of the Superior Court, Sitting by Designation.

ATTORNEYS:

**David J. Cattie, Esq.**
St. Thomas, U.S.V.I.
      *For the Appellant,*

**Maureen Phelan, AAG**
St. Thomas, U.S.V.I.
      *For the Appellee.*

## MEMORANDUM OPINION

**PER CURIAM.**

Michael Lewis ("Lewis") appeals his March 14, 2002,

conviction in the Superior Court of the Virgin Islands Division

of St. Thomas and St. John (the "Superior Court")[1] for

unauthorized possession of a firearm. For the reasons set forth

below, the Court will affirm Lewis' conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the morning of September 29, 1998, Lieutenant Randolph

DeSuza of the Virgin Islands Police Department was on duty at the

Callwood Command police station on Norre Gade in St. Thomas, U.S.

Virgin Islands. At approximately 2:15 a.m., a vehicle stopped in

front of the station. The driver, later identified as Lewis,

jumped out of the vehicle and began yelling that someone had shot

his friend, Mackellis George ("George"). Lieutenant DeSuza went

outside and found George injured in the vehicle. Lieutenant

DeSuza then instructed Lewis to follow his police car to the

hospital and telephoned the George family to inform them of the

shooting.

At the hospital, Lieutenant DeSuza and members of the George

family questioned Lewis about the shooting. Lewis stated that

---

[1]     At all times relevant to this appeal, the trial court
was known as the Territorial Court of the Virgin Islands and its
judges were referred to as Territorial Court Judges. Effective
January 1, 2005, however, the name of the Territorial Court
changed to Superior Court of the Virgin Islands. *See* Act of Oct.
29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004).
Recognizing this renaming, this Court employs the terms Superior
Court and Superior Court Judge.

there had been a drive-by shooting and provided conflicting details about the make and model of the vehicle.[2]

While at the hospital, the police overheard Lewis' grandmother stating that Lewis had shot a dog that day. The police recovered the body of the dog and brought it to the morgue. Bullet comparisons by the F.B.I. showed that the bullet removed from the dog was fired from the same gun that shot George. George later died in the hospital.

Lewis was thereafter charged with first degree murder, in violation of title 14, section 922(a) of the Virgin Islands Code ("Section 922(a)"), and unlawful possession of a firearm, in violation of title 14, section 2253 of the Virgin Islands Code ("Section 2253").[3] The Superior Court conducted Lewis' trial between January 28, and February 1, 2002.

At trial Lewis testified that on one evening in 1998, shortly after Hurricane Georges, George gave him alcohol and then sexually assaulted him. Although he avoided George after the incident, Lewis claimed that he was accosted by George when he returned to George's residence to gather his belongings on the

---

[2]    Lewis told George's mother he did not see the color or make of the vehicle. Later, Lewis told a detective that the car was white. Thereafter, Lewis told a police officer that the car was a blue four-door.

[3]    Count one of the Information charged Lewis with murder in the first degree, in violation of title 14, section 922(a)(1) of the Virgin Islands Code. Count two of the Information charged Lewis with unauthorized possession of a firearm, in violation of title 14, section 2253 of the Virgin Islands Code.

evening of September 28, 1998. According to Lewis, George pulled

out a gun, began firing shots into the ground, and ordered Lewis

to get into his vehicle. Lewis stated that once in the vehicle,

George began berating Lewis for telling people that George was a

homosexual. Lewis denied the allegations. George nonetheless

continued to threaten Lewis with the gun. Lewis testified that

he grabbed the gun to wrestle it from George when the gun fired

and shot George a number of times. Lewis further testified that

after the shooting, he had decided to fabricate a story that

George had been injured by a drive-by shooting. Lewis explained

that he threw the gun and George's ripped shirt in a garbage dump

and drove George to the police station.

On cross-examination, the prosecutor asked Lewis about the

history of his street nickname, "Rambo." Lewis explained that

his friends had given him the name because he would often bring a

Rambo-style hunting knife to middle school. Defense counsel

objected, claiming that the prosecution was presenting improper

character evidence. The trial judge sustained the objection.

The trial judge subsequently instructed the jury as follows:

> [THE COURT]: I struck from the record a matter in
> which a reference was made to the defendant
> having a knife. During your deliberations, you
> are not to consider those things at all . . . .

(Trial Tr. 249, Jan. 31, 2002.)

Following closing arguments, both parties submitted proposed

jury instructions to the judge. At the defense attorney's

request, the judge included a self-defense instruction regarding the murder charge. However, the defense attorney did not request a justification instruction for the unauthorized possession charge and the judge did not give such an instruction.

At the conclusion of the trial, the jury found Lewis not guilty of first degree murder and guilty of unauthorized possession of a firearm.

Lewis timely appealed from his conviction, raising the following issues: (1) whether the Superior Court erred in failing to instruct the jury regarding temporary justified possession of a handgun for self-defense; (2) whether Lewis' trial attorney provided ineffective assistance of counsel; (3) whether the Superior Court erred by allowing the prosecutor to ask questions about irrelevant and prejudicial maters; and (4) whether Lewis was improperly sentenced.

## II.  JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review final judgments and orders of the Superior Court. *See* Revised Organic Act of 1954 § 23A; 48 U.S.C. § 1613a;[4] V.I. CODE ANN. tit 4 § 33. We review the Superior Court's findings of fact for clear error and afford

---

[4]     The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2000), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

plenary review to its determinations of law. *Huggins v. Gov't of the V.I.*, 47 V.I. 619, 624 (D.V.I. App. Div. 2005).

### III. **ANALYSIS**

**A. The Justification Defense**

Lewis argues that his conviction must be reversed because the Superior Court erred by failing to instruct the jury regarding his theory of temporary justified possession of a handgun for self-defense.

Because Lewis did not request a justification charge, we review the jury instructions for plain error. *Gov't of the V.I. v. Fonseca*, 274 F.3d 760, 765 (3d Cir. 2001) ("In the absence of a timely objection, we review only for plain error."). To demonstrate plain error, the appellant must show that: (1) the Court erred, (2) the error was plain, and (3) the error prejudiced the defendant. *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Even if those prerequisites are met, the decision to correct the forfeited error remains within the discretion of the reviewing court. *Id.*

As a threshold matter, we must determine whether a justification defense is available to a defendant charged with unauthorized possession of a firearm under Virgin Islands law. The Virgin Islands Code does not expressly provide for a defense of justification as an excuse for violating Section 2253. We are unaware of any case addressing the issue of whether such a defense is available in a Section 2253 case.

A legislature's "failure to provide specifically for a
common law defense in drafting a criminal statute does not
necessarily preclude a defendant from relying on such a defense."
*United States v. Panter*, 688 F.2d 268, 271 (5th Cir. 1982)
(adding that "[t]his conclusion is unassailable; statutes rarely
enumerate the defenses to the crimes they describe").  The
defense of justification, pursuant to which a defendant's
criminal acts may be excused if was acting under a threat of
serious bodily injury, has been "historically recognized" at
common law. *United States v. Paolello*, 951 F.2d 537, 541 (3d Cir.
1992.  The United States Court of Appeals for the Third Circuit
has recognized that justification is a valid defense to federal
weapons possession charges. *See id.*  In *United States v.
Paolello*, 951 F.2d 537, 541 (3d Cir. 1992), the Third Circuit
explained that, although the federal felon in possession statute,
18 U.S.C. § 922(g) ("Section 922(g)"), was written "in absolute
terms, leaving little room for any defense based on a lack of
intent," *id.* at 541, courts have recognized that the
justification defense is available under the statute "on the
ground that Congress legislated against the backdrop of the
common law which has historically recognized this defense." *Id.*;
*see also United States v. Bailey*, 444 U.S. 394, 415 n. 11, 100
S.Ct. 624, 637 n. 11, 62 L.Ed.2d 575 (1980) ("Congress in
enacting criminal statutes legislates against a background of
Anglo-Saxon common law[.]").

The principles explained in *Paolello* are equally applicable in this case. Section 2253, like Section 922(g), is written in absolute terms. Both statutes are outright prohibitions on the possession of firearms by certain classes of people. Section 922(g) prohibits possession of firearms by felons. *See* 18 U.S.C. § 922(g). Section 2235 prohibits possession by people who are unauthorized to do so. *See* 14 V.I.C. § 2253. While Section 2253 does not allow for a defense based on lack of intent, the Legislature of the Virgin Islands, like Congress, enacts criminal statutes against the backdrop of the common law. We see no reason why the differences between the prohibitions set forth in Section 2253 and Section 922(g) would warrant holding that the defense of justification is available in Section 922(g) prosecutions, but unavailable in Section 2253 prosecutions. Thus, we find that the defense of justification is generally available under Section 2253.

We now turn to the issue of whether Lewis was eligible for a jury instruction on justification. "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). So long as the evidence presented at trial reveals a basis for the defense, a court may not refuse a defendant's request for an instruction on that defense. *Gov't of the V.I. v. Fonseca*, 274 F.3d 760, 766

-67 (3d Cir. 2001). The Third Circuit employs a "restrictive approach" to the defense of justification in weapons possession cases, requiring the defendant to "meet a high level of proof to establish the defense[.]" *Id.* at 542.

To be entitled to a jury instruction on the justification defense, a defendant must present sufficient evidence for a reasonable jury to find that:

> (1) he was under unlawful and present threat of death or serious bodily injury;
>
> (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;
>
> (3) he had no reasonable alternative (to both the criminal act and the avoidance of the threatened harm); and
>
> (4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*United States v. Paolello,* 951 F.2d 537, 540-41 (3d Cir. 1992).

Here, Lewis testified that when he went to George's apartment to retrieve his belongings, George pulled out a gun, fired shots onto the ground, and demanded that Lewis get into the vehicle. Viewing this evidence in the light most favorable to Lewis, it is sufficient to establish that Lewis faced an immediate threat of bodily injury. Furthermore, under Lewis' version of the facts, there is sufficient evidence to support the conclusion that Lewis did not recklessly place himself in a

situation where he would be forced to engage in criminal conduct.
Lewis testified that afer being sexually assaulted by George, he
avoided George's residence. Lewis further testified that he went
to collect his things when he thought that George would not be
present. Finally, Lewis testified that he only entered George's
vehicle after being ordered to do so by George. This testimony,
if believed, is sufficient to establish that Lewis did not
recklessly place himself in a situation where he was forced to
handle the gun.

In order to satisfy the third prong of the *Paolello* test,
Lewis must demonstrate that he had no reasonable legal
alternative to either the criminal act - possessing the gun, or
the avoidance of the threatened harm - being shot by George. A
corollary "to the requirement that the defendant have no
alternative to possession of the firearm is the requirement that
the defendant get rid of the firearm as soon as safe opportunity
arises." *Singleton*, 902 F.2d at 473 (holding that the
justification defense was inappropriate because the defendant
failed to call the police about the gun or return to the halfway
house with the gun after the danger subsided).

Based on Lewis' testimony, a reasonable jury could find that
Lewis' possession of the firearm to wrest it away from George was
unavoidable. However, the evidence shows that Lewis thereafter
maintained possession of the firearm in order to hide it and
avoid responsibility for the shooting. During the trial, the

defense attorney asked Lewis about what he did after George was

shot:

>[DEFENSE ATTORNEY]: Now, where did you go after
>Mr. George sustain the injuries?
>
>A: I tried to push the man over in the passenger
>seat.  I recline the seat.
>
>Q: So, he was in the driver's seat?
>
>A: Yes.
>
>Q: And what did you do next?
>
>A: I put him over in the passenger seat.
>
>Q: And what happened next?
>
>A: I start looking around, you know.  I see he
>shirt rip up and thing, so I start driving and I
>start to wonder what it is I going to do, and I
>look at the man and when I look at him, I realize
>where he get shoot, I see he get shoot in his
>face or some place else, so I say he look dead.
>
>Q: And what did you do?
>
>A: I just been there for a while wondering what
>to do and I just start driving and as I start
>driving, is a garbage pan in that area, that's
>when I notice, I say they going – people going to
>want to know how come his shirt rip and all of
>that, so I take his shirt and the gun and I throw
>it in the garbage pan and I keep on going . . .
>    .

(Trial Tr. 277-78, Jan. 30, 2002.)  Lewis never reported the gun

to the police, or attempted to leave the gun in a safe place

where it could be found by the police.  Rather, Lewis disposed of

the gun in a "garbage pan" where it could have been easily found

by others.

As the United States Court of Appeals for the Tenth Circuit has explained, "[s]ome attempt to place [the] . . . pistol into the hands of the police is an irreducible minimum in evaluating . . . [the defendant's] defense . . . ." *United States v. Al-Rekabi*, 454 F.3d 1113, 1123 (10th Cir. 2006). Lewis' failure to contact the authorities or to safely dispose of the gun rendered a jury instruction on the justification defense inappropriate. *See id.* (noting that the defendant's failure to either contact the police or leave the stolen pistol where it could be found by the police precluded any justification instructions); *United States v. Ridner*, 2006 U.S. Dist. LEXIS 7921, at *6 (E.D. Ky. Mar. 1, 2006) (holding that a defendant who took possession of ammunition to prevent his brother from committing suicide could not assert the justification defense because he did not turn ammunition over to the police when it appeared minutes later that brother's spirits had improved) (unpublished); *United States v. Gregg*, 2002 U.S. Dist. LEXIS 14475, at *1 (S.D.N.Y. Aug. 6, 2002) (holding that the defendant could not assert justification defense because he failed to "alert authorities that he had found a gun") (unpublished); *United States v. Brown*, 5 Fed. Appx. 292, 296 (4th Cir. March 15, 2001) (holding that the justification defense was improper because the defendant continued to possess the gun for 20 minutes after the threat of "death or serious bodily injury had dissipated without attempting to contact the authorities or safely dispose of the gun") (unpublished); *cf.*

*United States v. Bailey*, 444 U.S. 394, 399, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (holding that a prison escapee asserting a justification defense must show that he surrendered to the police as soon as safety allowed).[5]

Accordingly, the Superior Court did not err by failing to instruct the regarding the defense of justification.

## B.   Ineffective Assistance of Counsel

Lewis next contends that his trial attorney rendered ineffective assistance of counsel during the trial by: (1) failing to request a jury instruction on justification, and (2) failing to promptly object to questions from the prosecutor about why Lewis was nicknamed "Rambo."

It is well settled that "Sixth Amendment ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), are generally not entertained on direct appeal." *United States v. McLaughlin*, 386 F.3d 547, 555 (3d Cir. 2004). This practice stems from the reality that "such claims frequently involve questions regarding conduct that occurred outside the purview of the district court and therefore can be resolved only after a factual development at an evidentiary hearing." *Id.* In rare cases, the Court may address the claim on direct appeal when the record is sufficient to allow a determination on the issue. *See, e.g., Gov't of the*

---

[5]   Having found no error, the Court need not decide whether the Superior Court is estopped from retrying Lewis.

*V.I. v. Zepp*, 748 F.2d 125, 133 (3d Cir. 1984) (addressing the appellant's ineffective assistance of counsel claim on direct appeal); *but see Massaro v. United States*, 538 U.S. 500, 507, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (noting that few ineffective assistance of counsel claims "will be capable of resolution on direct appeal").

The record in this matter is not sufficiently compelling to address Lewis' claims. *See, e.g., Massaro*, 538 U.S. at 505 (explaining that because the evidence produced at trial was largely devoted to a defendant's guilt or innocence, the resultant record was inadequate to assess trial counsel's performance). We will therefore dismiss without prejudice Lewis' claim of ineffective assistance of counsel, so that he may raise this issue at a collateral hearing. *See, e.g., United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003) (noting that "[i]t has long been the practice of this court [the Third Circuit] to defer the issue of ineffectiveness of trial counsel to a collateral attack").

## C. Character Evidence

Lewis contends that the Superior Court erred in failing to curtail the prosecutor's questions about the hunting knife, which Lewis views as irrelevant and prejudicial. Lewis further contends that the court erred by waiting two days to give a curative instruction on the issue. In Lewis' view, these purported errors affected his right to a fair trial. Because

Lewis' trial attorney did not object to the prosecutor's questions, we review for plain error. *See Olano*, 507 U.S. at 725.

Lewis' assertion that the Superior Court waited two days to give a curative instruction is factually incorrect. The trial judge instructed the jury to disregard the testimony regarding the knife twice on the day after such testimony was given: once in the morning, and again during final instructions. Assuming that the testimony about the knife was inappropriate, we are not convinced that a one-day delay in charging the jury to disregard such testimony deprived Lewis of his constitutional right to a fair trial. The Superior Court properly instructed the jury to disregard the inappropriate testimony, and we presume that the jury did not consider it in their deliberation. *See Zafiro v. United States,* 506 U.S. 534, 541, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (stating that a jury is presumed to follow a court's instructions).

## D. Sentencing

Finally, Lewis argues that the Superior Court erred in sentencing him to fifteen years in prison when the statutory maximum is ten years. *See* 14 V.I.C. § 2253. Lewis was actually sentenced as an habitual offender pursuant to title 14, section 61(a) of the Virgin Islands Code, which allows a sentence of up to life imprisonment. Accordingly, Lewis' sentence fits within the statutory scheme.

## IV. CONCLUSION

For the forgoing reasons, we will affirm the judgment of the Superior Court.  We will dismiss Lewis' ineffective assistance claims without prejudice.  An appropriate Order follows.

**DATED: July 29, 2009.**

Copies to:

Hon. Curtis V. Gómez
Hon. Raymond L. Finch
Hon. Patricia D. Steele
David J. Cattie, Esq.
Maureen Phelan, AAG
Kim Bonelli
Clerk of the Superior Court
Olga Schneider
Semaj Johnson
Bailey Figler, Esq.